# SUPREME COURT.

## CHARLES H. SHAVER agt. MORRIS COHN.

## JACOB H. DIEFENDORF agt. SAME.

A preliminary *injunction* will not issue to restrain one of several owners of adjoining property, from erecting an improvement—an addition or extension, to his building, on the ground that such building will interfere with the several rights of the plaintiffs as claimed by a reservation under a common source of title to all of them in respect—first, to a certain passage way; second, to a certain drain, and third to the use of a certain well.

Where it appeared that the *inconvenience* to plaintiffs in going around the extension, of which there was ample room, to get to the rear of their lots, and to the well, was the only serious objection to the proposed improvement—a necessary and proper right of way to the rear of plaintiff's lots, still remaining open.

THESE two actions are similar. Each seeks to restrain the defendant from building an extension to his store in Cobleskill, on the ground that such extension will interfere with the several rights of the plaintiff in respect; first, to a certain passage way; second, to a certain drain; third, to the use of a certain well.

In 1864, the plaintiff, Shaver was the owner of a parcel of land in Cobleskill, and in 1864 and 1865, the plaintiff, Shaver, the plaintiff, Diefendorf, one Courter and one Calkins erected on their land, at their joint expense, a block of four uniform stores, and at the west end of the block, a bank building. This was done under an agreement that on the payment of the just proportion of the expense, and of the value of the land said plaintiff, Shaver, should convey to those several parties, such of said buildings as they should agree upon.

Accordingly, the plaintiff, Shaver retained the store and

lot at the east end, and in 1866, he conveyed by warranty deed to the plaintiff, Diefendorf, the store and lot next adjoining on the west; to said Calkens, the store and lot next west of Diefendorf's; and the said Courter, the remaining store and the bank building.

The four stores are each about twenty-three feet wide. They vary in depth, owing to the shape of the original premises in the rear. The lines dividing these store lots are parallel, and run nearly north and south.

The Caulkin's lot (now the defendant's) is at its shortest, about one hundred and thirty-seven feet; the plaintiff, Diefendorf's is somewhat longer, and the plaintiff, Shaver's somewhat shorter. The stores themselves are each of them fifty feet deep.

Each of the said deeds from plaintiff, Shaver, contains, after the description and before the *habendum* clause, the following words :

" With the right of a common user for ingress and egress, to, from, in and upon all of that part of said lots lying in the rear of the brick block, by the passage way leading from the Lawyersville road, necessary and proper for the use and occupation of said lots and the stores thereon, which is hereby reserved for that purpose, and the right of a common use of water from the well in rear of said brick block forever." No other reservation or condition is contained in the deeds.

Previously to these conveyances, the same parties who had built the buildings, constructed a well which is that referred to in the deeds. This well stands on the east line of the Courter, (now Ottman) lot, about thirty feet distant from the rear of the store, and just touching the west line of defendant's lot.

In May, 1868, Calkins and wife, by warranty deed conveyed his lot to defendant, and the deed contains the same clause which is above set forth.

At the west end of the original lot and close to the rear

of the bank building is an entrance of about ten feet wide between the bank building and the wooden store of Courter, which stands back of the bank building. This entrance is the only means of passing from the Lawyersville road which lies west of the opening to that part of the several store lots which lies in the rear of the stores. Teams have been accustomed to pass from the Lawyersville road through this entrance along the rear of the stores and near to the same, and then to return on the north side of the well, and so out at the same entrance ; thus making a circuit of an oval shape. It does not appear that this road traveled by teams has been regularly laid out, but teams have followed this course along the natural surface of the ground.

No division fences have been put upon the lots, and the rear of the lots behind the stores had been used for storing boxes, or piling rubbish, without much regard to the division lines.

It is claimed by plaintiff that a drain three feet deep was constructed along the rear of these buildings and by the said entrance across the Lawyersville road, by which the water from the roof of the stores was carried off. But the affidavits of the defendant deny the existence of such a drain, and show that the conductors from the roofs of the plaintiff's stores discharge on the ground.

The defendant has dug a cellar, and laid up a foundation wall for the erection of an addition to his store in the rear forty-five feet deep and of the same width with the store. This erection will cross and prevent travel on the usual track of teams as above described. But more than forty-two feet of defendant's lot in the rear of the proposed addition will remain unobstructed, and a space of over twenty-two feet will remain between the rear of the proposed addition and the nearest building, viz., the out building of Courter's wooden store.

The plaintiffs complain that the construction of the foundation to this addition has injured a part of the stone

work of the well, but the defendant shows successfully that he has repaired any such injury.

The plaintiffs claimed that their access to the well, will by this addition be made circuitous and around the end of the addition.

The defendant avers (and in this he is uncontradicted,) that when he purchased he had no knowledge of any agreement or thing affecting his title to his lot, or his right to use it, except so far as is indicated in his deed.

C. A. HOLMES and LYMAN TREMAIN, *for plaintiffs.*
WILLIAM H. YOUNG and HENRY SMITH, *for defendants.*

LEARNED, J.—I am of the opinion,

1st. In regard to the drain. There is no reservation of a right of drainage in the deed. According, to the allegations of the plaintiffs, the drain has existed only five or six years. No right could, therefore, be acqnired by prescription, and if the drain existed it is only by the license of the defendant, and he may revoke this at any time. And so far as regards this motion, the existence of any such drain seems to be too doubtful to authorize an injunction for its protection. Furthermore, if the plaintiffs are entitled to a drain, it can be constructed under the proposed addition, and there is no need of stopping a useful improvement of the defendant's property,

2d. In regard to the well, I am satisfied that, the defendant has not done and is not intending to do any harm to the well itself. If he has injured the stone work, he has repaired it. The stone cover of the well lay partly on the defendant's lot, and such part of that cover as lay on his lot he had a right to remove. The only rights of the plaintiffs in this respect are "a common use of water from the well," and so far as the well itself is concerned, I` do not think, from the affidavits before me, that this right has been seriously or at all injured. If it should finally appear that

Shaver agt. Cohn.

the defendant's cellar injures the water of the well, the plaintiffs would be entitled to relief, but I cannot see so much danger of this as to authorize a preliminary injunction.

If the defendant erects this addition, the plaintiffs will be obliged to go a greater distance to get to the well from their stores than they now go. But that inconvenience is no violation of the agreement in the deed. They will still have a common use of the water from the well.

3d. In regard to the right of way.

This is by far, the most important question involved It must be determined by the language of the deed and by the accompanying facts; not by any other agreement between the original parties, if any such other agreement existed. It is to be remembered that the several lots are the distinct and several property of the respective owners. Each has all the rights in his own lot of an owner in fee; subject only to the agreement or restriction in the deed. And at least as against the plaintiff, Shafer, the original grantor, the language of the deed is not to be extended in his favor.

The deed reserves, (and conveys,) "the right of common user for ingress and egress to, from in and upon all of that part of said lots lying in the rear of the brick block," * * * * * * "necessary and proper for the use and occupation of the said lots and the stores thereon." This I understand to be the reservation, (and grant,) of a necessary and proper right of way to the lots and stores. It cannot mean a right to travel over every part of every lot. This would be unnecessary, and absurd. It cannot mean a right to pile up rubbish anywhere on the lots. This would be inconsistent with the ownership. The deed, then, goes on to state from what place this right of way is to come, viz. : " by the passage way leading from the Lawyersville road." Now the words " passage way" in my opinion are used to describe what I have called the " entrance" that is the space between the bank building and the Courter wooden

store.   Those words do not describe the track which teams had travelled or should travel along the rear of the stores after they had come in through the entrance, but they describe the entrance itself.   There is nothing, therefore, in the deed which locates the right of way as it passes across the several lots.

It would have been easy for the grantor to use such words as would establish the location of the right of way reserved, (and granted,) along the rear of the stores as the plaintiffs insist it is.   But he has failed to do so, and has only created a right of way to the several lots without specifying where it shall be.   Unless, therefore, some action of the parties has established the location of the road, all that plaintiffs can insist upon is, that they shall have such a right of way to their lots as is necessary and proper. And, certainly, this right of way should be where it will least injure defendant; and least interfere with his use and enjoyment of his own property.

In the map exhibited on behalf of the plaintiffs, it was shown that upon the lot of the plaintiff, Diefendorf, there stands a tree, and that this tree would be an obstruction if the plaintiffs were compelled to go around the proposed addition to defendant's building.   But the obstruction on plaintiff's lot can be removed by them.   It is enough for defendant to afford a right of way  reasonable and  proper *to*, not *across*, the lot of the plaintiff, Diefendorf.

The defendant owns in the rear of his present store a lot over eighty feet deep.   It would be very unreasonable that he should be for ever prevented from building on any part of that lot.   The court ought to be reluctant to adopt such a construction of these deeds as would keep eighty feet of land always open and unimproved, merely for a road which could not occupy over ten feet of the space.   I cannot so construe the deed, nor can, I think, that there has been such a location of the way by user as to prevent any change.   As long as none of the parties desired to enlarge

Shaver agt. Cohn.

their stores, it was natural that teams should take the most direct route ; but the short time of six years under the circumstances, cannot have fixed the location, absolutely. There will still remain after defendant shall have erected his addition, ample room for plaintiff's teams to reach their lots. And they will still have a necessary and proper right of way to their lots.

It can hardly be questioned, that the plaintiff, Shaver might build on his lot such addition to his store, (the easternmost) as he should please, and might under this right of way enter the rear of such addition, and the same right would belong to the other owners.

The defendant's proposed addition may make it less convenient for the plaintiffs to reach the rear of their stores. But mere inconvenience to them is not a sufficient reason for preventing a desirable improvement.

One further consideration influences me in my decision. This is an application for a preliminary injunction. It is hardly possible that the facts or the principles of law can be presented as fully as they will be on the trial. If I should enjoin the defendant and it should prove in the end that I had erred, he would suffer great loss ; a loss difficult to compute and hardly to be compensated. If on the contrary, I deny this motion, and the plaintiffs finally show themselves entitled to the relief they ask, the defendant will have gone on with his building at his own risk, and the plaintiffs can have their rights enforced by its removal, and they can be compensated for their temporary injury.

I feel that great caution should be used in granting a preliminary injunction where its issue might work such serious injury to the defendant. The practice of granting such injunctions has been carried far enough in this state, and it ought not to be extended. In the language of Lord BROUGHAM, "the soundness of that discretion seems undeniable, which would be very slow to interfere when the thing to be stopped, while it is highly beneficial to one party

may very possibly be prejudicial to none.   The great fitness of pausing much before we interrupt men in those modes of enjoying or improving their property which are *prima facie* harmless, or even praisworthy, is equally manifest."

I shall deny the motion for an injunction in each case, with $10 costs.